UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| EVERADO MARTINEZ ARRELLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-266-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KRISTI NOEM, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Secretary of Homeland Security Kristi Noem, Director of United States Citizenship and Immigration Service ("USCIS") Joseph Edlow[1], and Director of the Nebraska Service Center for USCIS Loren K. Miller (collectively the "defendants") have moved to dismiss Plaintiff Everado Martinez Arrellin's Complaint under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.  [Record No. 12] The motion to dismiss will be granted because this Court lacks subject matter jurisdiction over the controversy.

## I.  Background

Under the Immigration and Nationality Act ("INA"), certain noncitizens may seek lawful permanent resident ("LPR") status based on a qualifying relationship with a United States citizen or LPR, employment, special immigrant classification, or another immigrant

---

[1] Joseph Edlow became Director of the United States Citizenship and Immigration Service on July 18, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he should be substituted as the defendant in this case in place of former Acting Director Angelica Alfonso-Royals.

category. *See generally* 8 U.S.C. §§ 1151, 1153.  Martinez Arrellin seeks legal status through his son by filing a Form I-130, Petition for Alien Relative.  [Record No. 1 at ⱷ 21]

After USCIS approves the underlying immigrant visa petition, the noncitizen must either: (1) apply to adjust status if present in the United States and otherwise eligible, 8 U.S.C. § 1255(a); or (2) apply for an immigrant visa through the United States Department of State, 8 U.S.C. § 1202(a), 22 C.F.R. § 42.61(a).  In either case, the applicant must satisfy several requirements including that he or she is not inadmissible under 8 U.S.C. § 1182(a).  *See, e.g.*, 8 U.S.C. § 1255(a).  One ground of inadmissibility is unlawful presence in the United States. 8 U.S.C. § 1182(a)(9).  However, the Secretary of Homeland Security may waive inadmissibility for unlawful presence if denying admission would cause "extreme hardship" to the noncitizen's United States citizen of LPR spouse or parent.  8 U.S.C. § 1182(a)(9)(B)(v).

Martinez Arrellin alleges that he is a citizen of Mexico who has lived in the United States since 1995 with his wife, his father (a permanent resident), and four children, three of who are United States citizens.  [Record No. 1 at ⱷ 21]  In February 2020 USCIS approved an I-130 petition filed by Martinez Arrellin's son to classify Martinez Arrellin as an immediate relative for immigration purposes.  [*Id*; Record No. 1-1]

In July 2020, Martinez Arrellin filed a I-601A provisional unlawful presence waiver so he could attend a consular interview in Mexico without triggering the three- or ten-year inadmissibility bar for unlawful presence.  [Record Nos. 1 at ¶ 21 and 1-2] The waiver (based on hardship to his father if Martinez Arrellin could not return to the United States) was approved approximately three and a half years later, in January 2024.  [Record Nos. 1 at ¶ 21 and 1-2]

Martinez Arrellin then applied for an immigrant visa at the US Consulate in Ciudad Juarez, Mexico. [Record No. 1 ¶ 22] He left the United States to attend his interview on January 5, 2025. [*Id.*] During the interview, Martinez Arrellin acknowledged that he had helped his son enter the United States across the Mexican border many years earlier. [*Id.*] As a result, officials found him inadmissible for "alien smuggling" under 8 U.S.C. § 1182(a)(6)(E)(i). [*Id.*] Assisting another person to enter the country unlawfully is a separate ground of inadmissibility under that provision. Based on this finding, USCIS revoked Martinez Arrellin's I-601A waiver and informed him that he would need to file a new waiver addressing this ground of inadmissibility. [*Id*; Record No. 1-3]

Martinez Arrellin filed a new waiver on Form I-601 later in January 2025. [Record Nos. 1 at ¶ 23 and 1-4] In support, he stated that approval would reunite him with his family in the United States. [Record No. 1 at ¶ 23] And he explained that he is the family's primary breadwinner and that his wife and father suffer from medical conditions requiring his financial support and daily assistance. [*Id.*] He also asserted that granting the waiver would serve the public interest because it would allow him to return to the United States to assume employment overseeing yearling horses for his employer, a multimillion-dollar stud farm in Kentucky. [*Id.* at ¶ 24]

After filing the waiver, Martinez Arrellin submitted an expedite request to USCIS, citing the hardship his family faced due to their separation, particularly his father, Robert Martinez, who is 76 years old. [*Id.* at ¶ 25] Robert Martinez lives near Martinez Arrellin and has relied heavily on him since Martinez's wife died in 2022. [*Id.*] In support of the request, Robert Martinez wrote that he has several medical conditions requiring regular appointments and treatment. [*Id.*] He stated that his son provides transportation to those appointments,

translates during medical visits, and helps manage his medications. [*Id.*] Martinez Arrellin also submitted a letter from his prospective employer, a local stud farm, stating that delays in Martinez Arrellin's return would cause the business significant financial harm. [*Id.* at ¶ 26] The request further notes that USCIS had already adjudicated—and approved—the earlier I-601A hardship waiver, which Martinez Arrellin argued should shorten the processing time. [*Id.* at ¶ 27]

Citing the USCIS website, Martinez Arrellin states that USCIS authorizes expedited immigration applications and petitions in cases of "a pressing or critical circumstance related to… the well-being of a person or group [such as] illness, disability, death of a family member" as well as severe financial loss to a company, including "if it is at risk of failing, losing a critical contract, or required to lay off other employees." [Record No. 1 at ¶ 28 (citing https://www.uscis.gov/forms/filing-guidance/expedite-requests (last visited March 16, 2026))] USCIS denied Martinez Arrellin's request to expedite. [*Id.* at ¶ 29; Record No. 1-5] According to Martinez Arrellin, current processing times indicate that USCIS will not adjudicate his waiver application until approximately November 2027. [Record No. 1 at ¶ 30]

Martinez Arrellin's Complaint asserts two causes of action. First, he alleges that USCIS's delay in adjudicating his waiver is unreasonable in violation of the Administrative Procedures Act ("APA") at 5 U.S.C. §§ 555(b) and 706(1). [*Id.* at ¶¶ 31–42] Second, he seeks a writ of mandamus, arguing that the defendants have a nondiscretionary duty to adjudicate his waiver of inadmissibility within a reasonable time. [*Id.* at ¶¶ 43–47] The Complaint asks the Court to order the defendants to adjudicate the waiver within thirty days. [*Id.* at 12]

The defendants have moved to dismiss. [Record No. 12] First, they argue that the Court lacks subject-matter jurisdiction because the decision whether to grant a waiver is

- 4 -

discretionary, and 8 U.S.C. § 1252(a)(2)(B)(ii) strips courts of jurisdiction to review.  [*Id*. at 3–5] They next contend that Martinez Arrellin is not entitled to mandamus relief because he has no clear right to adjudication within a specific time frame.  [*Id.* at 5–6]  Finally, the defendants assert in the alternative that Martinez Arrellin cannot show the delay is unreasonable.  [*Id.* at 7–12]

## II.  Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).  Thus, determining whether subject matter jurisdiction exists is a threshold matter that the Court must consider before addressing the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also* Fed. R. Civ. P. 12(h)(3) (providing that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp*., 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986)).  A 12(b)(1) motion to dismiss "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the

evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

A facial challenge to the Court's subject matter jurisdiction "merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.*

### III. Analysis

The defendants raise a facial challenge to Martinez Arrellin's assertion that this Court has jurisdiction over his unreasonable delay claim. [Record No. 12] More specifically, they that 8 U.S.C. §§ 1252(a)(2)(B)(ii) and 1182(d)(11) "taken together, strip courts of jurisdiction to review waiver decisions like this one." [*Id.* at 4]

Under the APA, Congress authorized individuals to challenge federal agency action. 5 U.S.C. § 702; *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004)). The APA establishes a basic presumption of judicial review for plaintiffs who suffer a legal wrong because of agency action, including an agency's failure to act. *Barrios Garcia,* 25 F.4th at 441 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967*), abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977); 5 U.S.C. § 702). That presumption, however, is not absolute. Section 701(a) provides that the presumption may be rebutted if the governing status precludes review under § 701(a)(1) or if the challenged action is "committed to agency discretion by law" under § 701(a)(2). *Id.* (citing *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018); § 701(a)(1), (a)(2)).

Although § 706(1) of the APA permits courts to compel agency action that is "unlawfully withheld or unreasonably delayed," such claims are limited. The Supreme Court in *Norton* held that such claims can proceed "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." 542 U.S. at 64 (emphasis in original).

Immigration statutes further restrict judicial review. Under 8 U.S.C. 1252(a)(2)(B)(ii), courts do not have jurisdiction to review "decision[s] or action[s] of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." "[T]his subchapter" refers to 8 U.S.C. §§ 1151–1382, *see Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010), meaning that § 1182(d)(11) is within its scope.

The waiver at issue here arises under 8 U.S.C. § 1182(d)(11), which provides that:

> The Attorney General *may, in his discretion* for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) of subsection (a)(6)(E) . . . if the alien has encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

8 U.S.C. § 1182(d)(11) (emphasis added). Thus, courts are barred from reviewing the waiver decision under § 1182(d)(11) by 8 U.S.C. § 1252(a)(2)(B)(ii). *See Bouarfa v. Mayorkas*, 604 U.S. 6, 10 (2024) (describing § 1252(a)(2)(B)(ii) as "a jurisdiction-stripping provision.").

The central question, then, is whether that discretionary authority extends not only to the substance of the waiver decision but also the timing of that decision. It does because section 1252(a)(2)(B)(ii) bars review of "any decision or action" committed to agency discretion. That broad language encompasses not only the ultimate decision, but also the

- 7 -

process leading to it, including the pace at which the agency acts. Because the timing of adjudication is part of the agency's decision-making process, it too is committed to agency discretion and, therefore, is insulated from judicial review.

This conclusion is consistent with decision of other courts which have held that § 1252(a)(2)(B)(ii) precludes review of delays in adjudicating discretionary waivers under § 1182(d)(11). *See Letona Garcia v. Edlow*, No. 8:25-CV-00032-PX, 2025 WL 3899825 (D. Md. Dec. 17, 2025) ("Whether a noncitizen is entitled to a waiver of inadmissibility is squarely within the jurisdiction of the Attorney General. *See* 8 U.S.C. § 1182(a)(9)(B)(v) & (d)(11). . . . Because 'USCIS retains discretion' to adjudicate the waiver application 'at all,' delay in such adjudication is not actionable under the APA."); *Garcia v. United States Citizenship & Immigr. Servs.*, 760 F. Supp. 3d 671 (N.D. Ill. 2024) (§ 1252(a)(2)(B)(ii) "strips the Court of the ability to review not just those ultimate decisions but any action leading to such decisions" and thus "insulates from judicial review the timeline under which that process unfolds."); *Boulay v. Jaddou*, 700 F. Supp. 3d 753 (D. Neb. 2023) (concluding that "the phrase 'any other decision or action' as used in § 1252(a)(2)(B)(ii) covers [USCIS's] discretionary decisions about how to prioritize and adjudicate the I-601 applications in this case").

At least one court have reached the opposite conclusion, *see Mejia de Reyes v. Miller*, No. 4:23-CV-5121-EFS, 2024 WL 2947716 (E.D. Wash. June 11, 2024), but that reasoning is not persuasive because it construes the statutory language too narrowly and fails to give full effect to the breadth of the phrase "any…action."

Martinez Arrellin does not dispute that 8 U.S.C. § 1252(a)(2)(B)(ii) would preclude judicial review of a discretionary denial of the waiver but he rejects the conclusion that it also precludes jurisdiction to hear challenges to the timing of USCIS's § 1182(d)(11) waiver

decisions.  [Record No. 15 at 8] He contends that the adjudication of this waiver has at least two components: a non-discretionary threshold determination that the person smuggled was the non-citizen's spouse, parent, son or daughter, and then the discretionary humanitarian, family unity, and public interest determination.  [*Id.*]  Martinez Arrellin's reliance on *Barrios Garcia v. U.S. Department of Homeland Security*, 25 F.4th 430 (6th Cir. 2022), and *Weyerhaeuser Co. v. U.S. Fish & Wildlife Service*, 586 U.S. 9 (2019), is misplaced.  Neither statute at issue in those cases included the phrase "in his discretion," as § 1182(d)(11) does. Instead, both courts considered whether the word "may," standing alone, rendered the decisions unreviewable under the APA.  *See Weyerhaeuser*, 586 U.S. at 24; *Barrios Garcia*, 25 F.4th at 451.

Moreover, the statutes in those cases imposed a clear, non-discretionary threshold determination.  In *Barrios Garcia*, the statute provided that the Secretary of Homeland Security "may grant work authorization" to a noncitizen with a "pending, bona fide" U-visa application. 8 U.S.C. § 1184(p)(6).  There, the Sixth Circuit held that the agency must first determine whether the application is bona fide before exercising discretion.  *Barrios Garcia*, 25 F.4th at 450–51.  Likewise, in *Weyerhaeuser*, the Endangered Species Act required the Secretary of the Interior to engage in a non-discretionary benefits-weighing determination before making a final decision.  586 U.S. at 24–25.

By contrast, § 1182(d)(11) confers broad discretion.  It enumerates reasons why the Secretary "may, in his discretion," grant a waiver after determining whether the applicant smuggled a person with a qualifying familial relationship and whether the individual smuggled others outside that category.  *See* 8 U.S.C. § 1182(d)(11).  The provision ultimately authorizes the Secretary to grant a waiver (again in his discretion), based on open-ended policy

- 9 -

considerations such as humanitarian purposes, family unity, or public interest. *See id*. These considerations are significantly less concrete than those in in *Barrios Garcia* and *Weyerhaeuser*, leaving "no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 586 U.S. at 23.

Accordingly, because the relevant statute commits the waiver decision to agency discretion, § 1252(a)(2)(B)(ii) strips courts of jurisdiction to review both the decision itself and any claim that the agency unreasonably delayed making that decision.

For similar reasons, the mandamus claim also will be dismissed. The Mandamus Act provides that district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. And Sixth Circuit authority "clearly indicates that '[m]andamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff.'" *Rimmer v. Holder*, 700 F.3d 246, 264 (6th Cir. 2012) (quoting *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)). However, in cases like this—where the defendant does not have a clear statutory duty to act within a prescribed timeframe—the decision is not one over which this Court retains authority to intervene.

## IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1.      Defendants' Motion to Dismiss [Record No. 12] is **GRANTED**.

2.      This action is **DISMISSED** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and **STRICKEN** from the docket.

- 10 -

Dated: March 20, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky